Robert P. Dickerson, Esq.
NV SBN 945
**THE DICKERSON KARACSONYI LAW GROUP**
1745 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 388-8600
bob@thedklawgroup.com

Kevin K. Fitzgerald
CA SBN 100682
**JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.**
601 South Figueroa Street, Suite 3460
Los Angeles, California 90017-5759
Telephone: (213) 485-1555
kkfitzgerald@jonesbell.com

Attorneys for Plaintiff Wells Fargo Clearing Services, LLC,
dba Wells Fargo Advisors

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WELLS FARGO CLEARING SERVICES, LLC, dba WELLS FARGO ADVISORS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JAMES F. FOSTER,<br><br>　　　　　　Defendant. | Case Number: 3:18-cv-00032<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with Declarations of Yoshiko Oswald, Thomas Metzger, and Kevin K. Fitzgerald; Proposed Order] |

　　　　Plaintiff Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors, hereby requests an Order: 1) enjoining Defendant James F. Foster from any and all use of Plaintiff's trade secrets and confidential information; 2) enjoining Defendant from soliciting any of Plaintiff's customers with whom Defendant had contact while he was employed by Plaintiff; and 3) enjoining Defendant from refusing to return customer files taken from Plaintiff's offices in connection with his resignation from employment.  The requested restraining order is timely and is necessary to prevent Defendant's continued solicitation of Plaintiff's customers using

misappropriated trade secrets in violation of his written agreement with Plaintiff and in violation of the Nevada Uniform Trade Secrets Act.

Pursuant to the Court's January 22, 2018 Minute Order, Defendant may respond to this Motion within 10 days of receipt and Plaintiff may file a reply within 5 days after Defendant's response.

Dated: January 22, 2018                     **THE DICKERSON KARACSONYI LAW GROUP**

By: _____/s/ Robert P. Dickerson_____
ROBERT P. DICKERSON
Attorneys for Plaintiff Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors

# TABLE OF CONTENTS

1. INTRODUCTION .................................................................................................... 1
2. STATEMENT OF FACTS ...................................................................................... 1
3. GOOD CAUSE EXISTS FOR EMERGENCY RELIEF ....................................... 4
   A. Failure to Address Plaintiff's Motion on an Emergency Basis Would Allow Defendant to Continue Unlawfully Soliciting Plaintiff's Customers; Plaintiff Attempted to "Meet and Confer" ............................ 4
   B. A Temporary Restraining Order May be Issued While Arbitration is Pending ............................................................................................................ 5
4. ARGUMENT ............................................................................................................ 6
   A. Plaintiff is Likely to Prevail on the Merits of its Claims ........................ 6
      i. Breach of Contract ................................................................................ 6
      ii. Breach of Duty of Loyalty .................................................................. 8
      iii. Misappropriation of Trade Secrets .................................................. 8
      iv. Interference with Prospective Economic Relations ..................... 9
      v. Interference with Contractual Relations ........................................ 10
      vi. Fraud ..................................................................................................... 10
   B. Plaintiff is Likely to Suffer Irreparable Harm Without Injunctive Relief ........... 11
   C. Public Policy .............................................................................................. 122
   D. Balance of Hardships ............................................................................... 12
5. CONCLUSION ...................................................................................................... 133

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Fin. Advisors v. Thorley*, 147 F.3d 229, (2d Cir. 1998) ............................................ 5

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, (2d Cir. 1990) ......... 5

*Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, (1992) ........................................ 10

*Camco, Inc. v. Baker*, 113 Nev. 512, 518, 936 P.2d 829, (1997) ................................................ 12

*Car-Freshner Corp. v. Victory-2000 EOOD*, 2016 U.S. Dist. LEXIS 173663, at *22 (D. Nev. Dec. 14, 2016) ............................................................................................................................... 11

*Farmer Bros. Co. v. Albrecht*, 2011 U.S. Dist. LEXIS 116243, at *5-6 (D. Nev. Oct. 4, 2011) .. 7

*Farmer Bros. Co. v. Albrecht*, 2011 U.S. Dist. LEXIS 116243, at *6 (D. Nev. Oct. 4, 2011) .... 11

*Fleetwash, Inc. v. Hall*, 2017 U.S. Dist. LEXIS 75938, at *5 (D. Nev. May 18, 2017) .............. 11

*Fosbre v. Las Vegas Sands Corp.*, 2016 U.S. Dist. LEXIS 5422, at *18 (D. Nev. Jan. 14, 2016) ........................................................................................................................................... 8

*Frantz v. Johnson*, 116 Nev. 455, (2000) ...................................................................................... 8

*Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, (Nev. 2016) .................................................. 7

*Hernandez v. IndyMac Bank*, 2012 U.S. Dist. LEXIS 125540, at *1 (D. Nev. Sep. 5, 2012) ....... 6

*J.J. Indus., LLC v. Bennett*, 119 Nev. 269, (2003) ...................................................................... 10

*Kahn v. Dodds (In re AMERCO Derivative Litig.)*, 127 Nev. 196, (2011) ................................... 9

*Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 120, 787 P.2d 772, (1990) ................................ 7

*New Eng. Life Ins. Co. v. Lee*, 2015 U.S. Dist. LEXIS 39462, at *15 (D. Nev. Mar. 27, 2015) ... 8

*Padilla Constr. Co. v. Big-D Constr. Corp.*, 386 P.3d 982 (Nev. 2016) ....................................... 7

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, (9th Cir. 2009) .......................................................... 12

*Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975 (9th Cir. 2010) ......... 5

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, (2008) ...................................................... 6

**Statutes**

NRS § 600A.040 .............................................................................................................................. 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

### 1. INTRODUCTION

Plaintiff Wells Fargo Clearing Services, LLC, doing business as Wells Fargo Advisors, is a registered broker/dealer that provides financial services. Defendant James F. Foster is a former employee of Plaintiff who left in October 2017 to join a competitor, Edward Jones. Prior to his resignation, Defendant misappropriated Plaintiff's trade secrets and confidential information, including, but not limited to, customer names and contact information and files containing detailed information about customer accounts. Also prior to his resignation, Defendant solicited Plaintiff's customers to move their accounts to Edward Jones despite an explicit one year "non-solicitation" provision in his employment agreement with Plaintiff.

Plaintiff seeks a temporary restraining order enjoining Defendant from using any and all of Plaintiff's trade secrets and confidential information, from refusing to return customer files, and from soliciting Plaintiff's customers in violation of his agreement with Plaintiff.

### 2. STATEMENT OF FACTS

On or about September 7, 2011, Defendant accepted an offer from Plaintiff for a position as a financial advisor. (Metzger Decl. ¶ 6; Ex. 1.) Defendant executed the "Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, And Assignment of Inventions." (Metzger Decl. ¶ 6; Ex. 2.) That Agreement provides, among other things, that:

> *for a period of one (1) year immediately following termination or resignation* of my employment for any reason, I will not do any of the following either directly or indirectly or through associates, agents, or employees:
>
> a. *solicit, recruit or promote the solicitation or recruitment of any employee or consultant of the Company* for the purpose of encouraging that employee or consultant to leave the Company's employ or sever an agreement for services; or
>
> b. *solicit, participate in or promote the solicitation of any of the Company's clients, customers, or prospective customers* with whom I had Material Contact

–1–

*and/or regarding whom I received Confidential Information, for the purpose of providing products or services that are in competition with the Company's products or services ("Competitive Products/Services"). ·Material Contact· means **interaction between me and the customer, client or prospective customer within one (1) year prior to my last day as a team member which takes place to manage, service or further the business relationship.** This provision does not supersede the Protocol for Broker Recruiting applicable to the position with the title of Financial Advisor or Financial Consultant employed by Wells Fargo Advisors, LLC (WFA").*

(emphasis added) (Ex. 2 at p. 2)

The Agreement also protects Plaintiff's confidential information and trade secrets, which are defined as:

*information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that (1)-derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Company's Trade Secrets include, but are not limited to, the following;*

- ***the names, address, and contact information of the Company's customers and prospective customer, as well as any other personal or financial information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity and/or expiration or renewal dates, roans, policies, investment activities, purchasing practices, insurance, annuity policies and objectives***;
- *any information concerning the Company's operations, including without limitation, information related to its methods, services, pricing, costs, margins and mark ups, finances, practices, strategies, business plans, agreements, decision-making,*
- *systems, technology, policies, procedures, marketing, sales, techniques, agent information, and processes:*
- *any other proprietary and/or confidential information relating to the Company's customers, employees, products. services, sales, technologies, or business affairs.*

(emphasis added) (Ex. 2 at p. 1)

With regard to Plaintiff's confidential information and trade secrets, Defendant agreed

> *that any Confidential Information of the Company is to be used by me solely and exclusively for the purpose of conducting business on behalf of the Company. I am expected to keep such Confidential Information confidential and not to divulge, use or disclose this information except for that purpose.* ***If I resign or am terminated from my employment for any reason, I agree to immediately return to the Company all Records and Confidential Information,*** *including information maintained by me in my office, personal electronic devices, and/or at home.*

(emphasis added) (Ex. 2 at p. 1)

On or about October 27, 2017, Defendant spoke with Tom Metzger, Plaintiff's Regional Manager for the area that includes Carson City, Nevada. (Metzger Decl. ¶ 2.) Defendant informed Mr. Metzger that he had been offered a position at Edward Jones and intended to accept the offer because Edward Jones has "a better sunset program." (Id.)

A "sunset program" refers to a part of a firm's typical retirement plan whereby a retiring registered representative's customers are assigned to other brokers, but the retiring registered representative still receives a portion of the revenue received from his former customers after his retirement. Mr. Metzger explained to Defendant that Wells Fargo Advisors has a generous "sunset program," and asked for a chance to explain that program before Defendant made a decision. (Id.)

Defendant agreed, and, later that day, spoke again with Mr. Metzger and with David Morochnick, a Regional Brokerage Manager based in Reno, Nevada, who was meeting in person with Mr. Foster. (Metzger Decl. ¶ 3.) Mr. Metzger and Mr. Morochnick explained the features of Wells Fargo's "sunset program" in detail. (Id.) Following the meeting, Defendant told Mr. Metzger that he wanted the weekend to think about whether he would stay with Wells Fargo or move to Edward Jones. (Id.)

On Saturday, October 28, 2017, Defendant began calling his customers and solicited them to move their accounts to Edward Jones. (Oswald Decl. ¶ 4.)

On Monday, October 30, 2017, Defendant provided his resignation letter to Mr. Metzger. (Metzger Decl. ¶ 4.) Following Defendant's resignation, Mr. Metzger reassigned Defendant's accounts to other Wells Fargo registered representatives. (Metzger Decl. ¶ 5.)

1 Those registered representatives promptly reached out to the customers, and were surprised to
2 discover that many of them already knew of Defendant's departure and explained that he had
3 already asked them on October 28, 2017 to move their accounts to Edward Jones.

On or about December 19, 2017, Defendant stopped by the house of Yoshiko Oswald, one of Plaintiff's customers whose account he had overseen while Defendant was employed by Plaintiff, and met with Ms. Oswald and her son Bobby. (Oswald Decl. ¶ 5.) Defendant brought a file to her home that Ms. Oswald recognized as her own customer file from Wells Fargo, and which contained detailed information about her account. (Oswald Decl. ¶ 6.) By reviewing the file, Defendant found the exact amount of the prior year's mandatory minimum withdrawal for Ms. Oswald's IRA and advised Ms. Oswald of that amount. (Id.) During his meeting with Ms. Oswald at her home, Defendant solicited Ms. Oswald to close her account with Plaintiff and open a new account with Edward Jones. (Oswald Decl. ¶ 5.)

On or about December 26, 2017, Plaintiff was informed by Yoshiko Oswald of her meeting with Defendant. (Oswald Decl. ¶ 7.) Ms. Oswald and her son Bobby also asked Plaintiff if Plaintiff could obtain her account file from Defendant, for use in advising Ms. Oswald with respect to future investments. (Id.)

On January 18, 2018, Plaintiff filed a Statement of Claim and commenced arbitration against Defendant in Financial Industry Regulatory Authority (FINRA) Arbitration. (Fitzgerald Decl. ¶ 2.)

### 3. GOOD CAUSE EXISTS FOR EMERGENCY RELIEF

**A. Failure to Address Plaintiff's Motion on an Emergency Basis Would Allow Defendant to Continue Unlawfully Soliciting Plaintiff's Customers; Plaintiff Attempted to "Meet and Confer"**

As set forth above, Defendant has solicited Plaintiff's customers using misappropriated trade secrets. As explained in further detail below, the loss of customers constitutes irreparable harm to Plaintiff. Further, the Agreement expressly provides that any violation of the Agreement is "the proper subject for immediate injunctive relief" (Ex. 2 at p. 3.)

and the Nevada Uniform Trade Secrets Act expressly permits injunctive relief in instances of "[a]ctual or threatened misappropriation" of trade secrets. NRS § 600A.040.

Consistent with the requirements of Local Rule 7-4, Plaintiff attempted to "meet and confer" with Defendant's counsel before filing the present motion. (Fitzgerald Decl. ¶ 5.) Despite making a good faith effort, the parties could not reach a resolution. (Id.) Defendant's counsel is James H. Ferrick III of Greensfelder, Hemker & Gale, P.C. at 10 South Broadway, Suite 2000, St. Louis, MO 63102. (Id.) Defendant's Counsel may be reached at (314) 516-2689. (Id.)

**B.   A Temporary Restraining Order May be Issued While Arbitration is Pending**

Although Plaintiff has commenced a separate arbitration proceeding against Defendant before FINRA, Plaintiff is still entitled to seek injunctive relief while the arbitration is pending. *See Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010). *Toyo Tire* is particularly apposite; the Ninth Circuit reasoned that, because of the time necessary for the selection of an arbitration panel, interim injunctive relief through a U.S. District Court was necessary to ensure that the plaintiff would not lose its customers before the arbitration panel could be convened. *Id.* Thus, by granting interim injunctive relief, a district court may "preserve the status quo" and thereby ensure "the meaningfulness of the arbitration process." *Id.*; *see also Am. Express Fin. Advisors v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) ("In many instances, it is by freezing the status quo that the meaningfulness of arbitration is best protected… For if events proceed unenjoined, the subject matter of arbitration may be irretrievably altered before an arbitral decision can be reached."); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990) ("Arbitration can become a "hollow formality" if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute.").

This is consistent with both Nevada law and FINRA Rules. Nevada Revised Statute section 38.222(1) provides that, "[b]efore an arbitrator is appointed…the court, upon

1 motion of a party to an arbitral proceeding and for good cause shown, may enter an order for
2 provisional remedies to protect the effectiveness of the arbitral proceeding to the same extent
3 and under the same conditions as if the controversy were the subject of a civil action." FINRA
4 Rule 13804(a)(1) expressly provides that "[p]arties to a pending arbitration may seek a
5 temporary injunctive order from a court of competent jurisdiction." Thus, both Nevada law and
6 FINRA Rules permit a party to seek a provisional remedy from a court even if an arbitration
7 proceeding is pending.

8 Here, it may be several months before a FINRA arbitration panel is selected.
9 Unless a temporary restraining order is issued, Defendant will continue to solicit Plaintiff's
10 customers and will irreversibly alter the status quo if those customers move their accounts to
11 Edward Jones before the arbitration panel convenes. Accordingly, interim injunctive relief is
12 necessary to preserve the status quo until the FINRA arbitration panel may decide the merits of
13 Plaintiff's claims.

### 4.   ARGUMENT

A temporary restraining order ("TRO") may be granted where the movant shows that: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in its favor; and 4) that an injunction is in the public interest." *Hernandez v. IndyMac Bank*, No. 2:12-cv-00369-MMD-CWH, 2012 U.S. Dist. LEXIS 125540, at *1 (D. Nev. Sep. 5, 2012); *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

A. **Plaintiff is Likely to Prevail on the Merits of its Claims**

*i.   Breach of Contract*

Defendant violated multiple provisions of the Agreement, including the provision prohibiting solicitation of Plaintiff's customers and the provision prohibiting Defendant from taking and using any of Plaintiff's confidential information.

The elements for a claim for breach of contract are: 1) formation of a valid contract; 2) performance or excuse of performance by plaintiff; 3) material breach by the

defendant; and 4) damages. *Padilla Constr. Co. v. Big-D Constr. Corp.*, 386 P.3d 982 (Nev. 2016). Here, Plaintiff and Defendant entered into the "Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, And Assignment of Inventions." Plaintiff performed all its obligations under the Agreement.

Defendant breached the agreement by violating the non-solicitation provision, which applies to any of Plaintiff's customers with whom Defendant had contact within one year prior to Defendant's last day of employment with Plaintiff. (Ex. 2 at p. 2.) A non-competition provision is enforceable so long as the provision is "reasonable." *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 155 (Nev. 2016). In assessing the reasonableness of such a provision, "[t]ime and territory are important factors to consider." *Id.* A non-compete provision with a one-year duration and limited to the geographic area served by the former employer has been upheld as "reasonable." *See Farmer Bros. Co. v. Albrecht*, No. 2:11-CV-01371-PMP-CWH, 2011 U.S. Dist. LEXIS 116243, at *5-6 (D. Nev. Oct. 4, 2011); *Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 120, 787 P.2d 772, 774 (1990). Here, the non-solicitation provision is for a one-year duration and is limited to customers Defendant contacted while he was employed by Plaintiff. The length of the restriction and the geographic restriction are therefore reasonable. Thus, the non-solicitation provision is enforceable and Defendant breached it by soliciting Plaintiff's customers both before and after his resignation. Defendant breached the non-solicitation provision by soliciting Plaintiff's customers, including, but not limited to, Ms. Oswald. (Oswald Decl. ¶¶ 4-6.)

Defendant further breached the Agreement by misappropriating Plaintiff's confidential information. The Agreement explicitly provides that Plaintiff's confidential information is to be used "solely and exclusively" for conducting business on behalf of Plaintiff. (Ex. 2 at p. 1.) It further provides that, after Defendant resigns, he agrees to "immediately return" all confidential information in his possession. *Id.* Here, Defendant took files containing detailed information of the accounts of Plaintiff's customers, including, but not limited to, the account file for Ms. Oswald. (Oswald Decl. ¶ 4.) Defendant then used that confidential

information to solicit Ms. Oswald to move her account to Edward Jones. (Oswald Decl. ¶ 4-6.)

Defendant thereby breached the Agreement and there is a likelihood that Plaintiff will prevail on the merits.

### ii. Breach of Duty of Loyalty

Every employee owes his or her employer a duty of loyalty. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 U.S. Dist. LEXIS 5422, at *18 (D. Nev. Jan. 14, 2016); *New Eng. Life Ins. Co. v. Lee*, No. 2:14-CV-1797 JCM (NJK), 2015 U.S. Dist. LEXIS 39462, at *15 (D. Nev. Mar. 27, 2015). Here Defendant resigned from his employment with Plaintiff on October 30, 2017, yet solicited customers to move their accounts to Defendant at his new place of employment on the Saturday before he resigned, i.e., October 28, 2017. Thus, Defendant actively solicited Plaintiff's customers to move their accounts to Edward Jones while Defendant was still employed by Plaintiff. (Oswald Decl. ¶ 4.) Defendant thereby breached his duty of loyalty by actively undermining Plaintiff's business relationships with its customers. Plaintiff is therefore likely to succeed on the merits of its claim for Breach of the Duty of Loyalty.

### iii. Misappropriation of Trade Secrets

The elements of a misappropriation of trade secrets claim are: 1) a valuable trade secret; 2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and 3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*, 116 Nev. 455, 466-67 (2000).

Here, Plaintiff has dedicated substantial personnel and capital resources to the development, servicing and growth of its client lists. Those expenses include the costs of advertising, promotion, marketing, and salaries to determine who is a suitable customer for Plaintiff, and what financial products are both appropriate for Plaintiff's customers, and of interest to Plaintiff's customers. Furthermore, Plaintiff acquires and continuously updates a variety of types of highly confidential information regarding their clients containing, inter alia,

the names, addresses, telephone numbers, and financial information of their clients. This information is not commonly known or easily discoverable. That information affords Plaintiff a significant and valuable competitive advantage in the marketplace.

Defendant misappropriated Plaintiff's trade secrets, which include, but are not limited to, customer account files which contain customer contact information as well as detailed information of those customers' accounts with Plaintiff. Defendant improperly used Plaintiff's trade secrets by, among other things, bringing them to a meeting with Ms. Oswald and using that information to solicit her to open an account with Edward Jones. (Oswald Decl. ¶¶ 4-6.)

Defendant's misappropriation and use of Plaintiff's trade secrets was expressly prohibited under the Agreement. (Ex. 2.) Defendant's use of the trade secrets was therefore wrongful, and thus there is the likelihood that Plaintiff will prevail on its claim for Misappropriation of Trade Secrets.

### iv. Interference with Prospective Economic Relations

Interference with prospective economic advantage requires the demonstration of the following five factors: 1) a prospective contractual relationship between the plaintiff and a third party; 2) knowledge by the defendant of the prospective relationship; 3) intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and 5) actual harm to the plaintiff as a result of the defendant's conduct. *Kahn v. Dodds (In re AMERCO Derivative Litig.)*, 127 Nev. 196, 226 (2011).

Here, Plaintiff had an existing business relationship with each of its customers, who had one or more accounts with Plaintiff. Plaintiff had prospective economic relationships with each of those customers in that it was likely that those customers would continue using Plaintiff's services to complete financial transactions in their accounts with Plaintiff.

Defendant knew of the relationship between Plaintiff and its customers, and that it was likely that those customers would continue to use Plaintiff's services to complete financial transactions. Defendant intended to harm Plaintiff by interfering in that relationship

and soliciting customers, such as Ms. Oswald, to move their accounts to Edward Jones. (Oswald Decl. ¶ 4.) There is no applicable privilege or justification that applies to Defendant's conduct. As a result of Defendant's intentional interference, some of Plaintiff's customers have moved their accounts to Edward Jones. (Metzger Decl. ¶ 5.) Plaintiff is thereby likely to succeed on the merits.

      *v.*      ***Interference with Contractual Relations***

In order to establish intentional interference with contractual relations, a plaintiff must establish: 1) a valid and existing contract; 2) the defendant's knowledge of the contract; 3) intentional acts intended or designed to disrupt the contractual relationship; 4) actual disruption of the contract; and 5) resulting damage. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003).

Plaintiff had existing contractual relations with its customers as those customers had executed agreements with Plaintiff to open one or more accounts with Plaintiff. Defendant, as the registered representative assigned to assist certain of Plaintiff's customers, had knowledge of the contractual agreements between Plaintiff and its customers.

Defendant intentionally disrupted Plaintiff's contractual relationships by soliciting its customers to open accounts with Edward Jones. (Oswald Decl. ¶ 4.) As a result of Defendant's intentional interference, some of Plaintiff's customers have moved their accounts to Edward Jones. (Metzger Decl. ¶ 5.) Plaintiff is therefore likely to succeed on the merits.

      *vi.*      ***Fraud***

A claim for fraud requires a showing of: 1) a false representation made by the defendant; 2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); 3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4) plaintiff's justifiable reliance upon the misrepresentation; and 5) damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992).

Here, Defendant deliberately misrepresented that he was still thinking about staying with Wells Fargo, when in actuality Defendant had already decided to accept the

position at Edward Jones and used the weekend to begin soliciting Plaintiff's customers. (Metzger Decl. ¶ 3.) Defendant made this misrepresentation so that Wells Fargo would not begin reassigning the accounts managed by Defendant before Defendant first had a chance to solicit those customers. As a result of Defendant's misrepresentations, some of Plaintiff's customers have moved their accounts to Edward Jones. (Metzger Decl. ¶ 5.) Plaintiff is therefore likely to succeed on its fraud cause of action and its Application should be granted.

### B. Plaintiff is Likely to Suffer Irreparable Harm Without Injunctive Relief

As set forth above, Defendant will continue to solicit Plaintiff's customers using Plaintiff's customer files if Defendant is not immediately enjoined. Plaintiff cannot be adequately compensated with monetary damages for its loss of customers, and such losses constitute irreparable harm. *See Farmer Bros. Co. v. Albrecht*, No. 2:11-CV-01371-PMP-CWH, 2011 U.S. Dist. LEXIS 116243, at *6 (D. Nev. Oct. 4, 2011) ("Loss of customers or goodwill constitutes irreparable harm, so long as such loss is not speculative"); *Car-Freshner Corp. v. Victory-2000 EOOD*, No. 2:14-cv-01471-RFB-GWF, 2016 U.S. Dist. LEXIS 173663, at *22 (D. Nev. Dec. 14, 2016) ("Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages"); *Fleetwash, Inc. v. Hall*, No. 3:17-cv-00170-MMD-VPC, 2017 U.S. Dist. LEXIS 75938, at *5 (D. Nev. May 18, 2017) ("Absent preliminary relief, Defendants' conduct will result in irreparable harm to Plaintiff in the form of losing customers and reputational harm that monetary damages alone cannot address").

Plaintiff's Application is also timely because it was only on December 26, 2017 that Plaintiff first discovered that Defendant brought Ms. Oswald's client file to his meeting with Ms. Oswald.[1] Prior to that date, Plaintiff did not know, and had no reason to know, that Plaintiff had taken client files with him or that he was actively using those files to solicit

---

[1] Unfortunately, Ms. Oswald came down with the flu shortly after alerting Plaintiff, and was unable to execute a declaration in support of this Application until very recently.

customers. Accordingly, Plaintiff will suffer immediate and irreparable harm if the requested injunctive relief is not granted.

### C.  Public Policy

Public policy in Nevada permits noncompete provisions so long as they are "reasonable." *Camco, Inc. v. Baker*, 113 Nev. 512, 518, 936 P.2d 829, 832 (1997). As set forth above, the non-solicitation provision is reasonable as to time and scope and is therefore consistent with Nevada public policy. With regard to Plaintiff's other claims, they involve disputes between two private parties and do not implicate public policy. When the reach of an injunction is limited only to the parties, and has no impact on non-parties, the public interest will be "at most a neutral factor in the analysis." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Accordingly, the injunction requested by Plaintiff is consistent with Nevada public policy.

### D.  Balance of Hardships

The balance of hardships weighs in Plaintiff's favor; the proposed restraining order directs Defendant to cease soliciting Plaintiff's customers, to refrain from using Plaintiff's trade secrets and confidential information, and to refrain from refusing to return Plaintiff's customer files. Defendant has no right or claim to any of Plaintiff's customer accounts, trade secret information, or customer files; Defendant is not surrendering any rights, he is being asked to simply refrain from taking action. The hardship to Plaintiff on the other hand would be a significant loss of customers, some of whom have had accounts with Plaintiff for many years. Accordingly, the balance of hardships weighs in favor of Plaintiff and the temporary restraining order should be issued.

///
///
///
///
///

## 5.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order: 1) enjoining Defendant from any and all use of Plaintiff's trade secrets and confidential information; 2) enjoining Defendant from soliciting any of Plaintiff's customers with whom Defendant had contact while he was employed by Plaintiff, and 3) enjoining Defendant from refusing to return Plaintiff's customer files.

Dated: January 22, 2018                              THE DICKERSON KARACSONYI LAW GROUP

By: _____/s/ Robert P. Dickerson_____
ROBERT P. DICKERSON
Attorneys for Plaintiff Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors